IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:08cr33-MHT |
| ANQWUAN LAMAR OSBORNE | ) | (WO) |

### OPINION AND ORDER

Defendant Anqwuan Lamar Osborne pled guilty to being
a felon in possession of a firearm in violation of 18
U.S.C. § 922(g)(1).  He is currently before the court for
sentencing.   In its presentence investigation report
(PSR), the United States Probation Office recommended
that Osborne receive a four-offense-level enhancement to
his sentence pursuant to U.S.S.G. § 2K2.1(b)(6) because
he possessed the firearm "in connection with another
felony offense," namely, possession of ten pills of
ecstasy.   Osborne objects that the § 2K2.1(b)(6)
"specific offense characteristic" is inapplicable because
there is no evidence the firearm facilitated his

possession of ecstasy.  For the reasons given below, the court holds that § 2K2.1(b)(6) does not apply.


## I. BACKGROUND

Osborne was arrested on June 29, 2007, when Corporal Sims of the Montgomery City Police Department witnessed Osborne exit a black SUV and cross the street to meet another individual, who was in another vehicle.  Sims and another officer, Corporal Butler, approached Osborne and the individual in the vehicle.  Osborne began running; Sims pursued.  Eventually, Osborne stumbled to the ground, and the firearm he was carrying fell from his waistband.  As Sims caught up, he saw Osborne scramble to regain control over the pistol; he then saw Osborne stuff something, later identified as a small envelope containing ten pills of ecstasy, into his front waistband.  The individual in the vehicle was not apprehended.

A two-count indictment was filed on February 12, 2008, charging Osborne with one count of violating 18 U.S.C. § 922(g)(1), the "felon-in-possession" statute,[1] and one count of possession of a controlled substance in violation of 21 U.S.C. § 844(a), the "simple possession" statute.[2]

---

1. Section 922(g)(1) provides:

> "It shall be unlawful for any person-- who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

2. Section 844(a) provides:

> "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter."

3

Pursuant to U.S.S.G. § 2K2.1(a)(2), the base-offense level in Osborne's case is 24. The PSR concluded, however, that Osborne should receive a four-level enhancement based on the specific-offense characteristic in U.S.S.G. § 2K2.1(b)(6), which reads: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." The PSR applied the specific-offense characteristic because it concluded that Osborne possessed the firearm "in connection with" the ecstasy tablets found in his waistband, raising his offense level to 28. The PSR then recommended that Osborne receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) & (b), reducing his total offense level to 25.

## II. DISCUSSION

Osborne objects to the § 2K2.1(b)(6) four-offense-level enhancement on two grounds.  First, he contends that the government tested only one ecstasy tablet; he maintains that the other nine may have been legal substances such as caffeine pills.  Second, he contends that the government has not proved that he possessed the pistol "in connection with" another felony offense.

In assessing Osborne's objection, the court recognizes two well-settled propositions.  First, the court's inquiry into whether the § 2K2.1(b)(6) "specific-offense characteristic" applies is necessarily fact-intensive.  Cf. United States v. Saunders, 318 F.3d 1257, 1267 (11th Cir. 2003) (determining that application of U.S.S.G. § 2B6.1(b)(2), which applies a two-point enhancement if the defendant was dealing in stolen property, depends on the "totality of the circumstances"); United States v. Morris, 286 F.3d 1291, 1296 (11th Cir. 2002) (determining that what constitutes

"position of trust" within meaning of U.S.S.G § 3b1.3 is highly dependant on specific facts of each situation). Second, "[t]he government bears the burden of establishing by a preponderance of evidence the facts necessary to support a sentencing enhancement." United States v. Kinard, 472 F.3d 1294, 1298 (11th Cir. 2006) (per curiam). While not the most exacting of standards, it must be noted that "the preponderance standard is not toothless" and "does not grant district courts a license to sentence a defendant in the absence of sufficient evidence." United States v. Lawrence, 47 F.3d 1559, 1566-1567 (11th Cir. 1995).

### A.

Osborne's first contention in support of his objection--that the government tested only one of the ten pills and that the other nine may have been legal substances--does not affect the application of the § 2K2.1(b)(6) enhancement. The Guidelines state that,

6

"'Another felony offense' for purposes of subsection (b)(6) means any federal, state, or local offense ... punishable by a term of imprisonment exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6), comment. n. 14(c).  In Alabama, possession of ecstasy, in any amount, is a felony punishable by imprisonment of not less than one year and one day.  1975 Ala. Code §§ 13A-12-212(a)(1), 13A-12-212(b), 13A-5-6(a)(3) (2005).  Therefore, Osborne's possession of even one pill of ecstasy establishes the predicate "felony offense" necessary for application of the § 2K2.1(b)(6) enhancement, and it does not matter that the other nine pills were not tested.


                              B.

     Osborne's second contention in support of his objection--that the government has not proved that he possessed the weapon "in connection with" his possession of ecstasy--has merit.  Prior to 2006, the Guidelines did


                              7

not define "in connection with" as used in § 2K2.1(b)(6),
see U.S.S.G. App. C. (Nov. 1, 2007) at amd. 691
(explaining why the Guidelines were amended to include a
definition of "in connection with" and clarifying that the
effective date of that amendment was November 1, 2006);
see also United States v. Rhind, 289 F.3d 690, 695 (11th
Cir. 2002)(noting that the Guidelines do not define "in
connection with"), and the federal courts of appeals were
split regarding the proper interpretation of the phrase.
The November 1, 2006, Guideline Manual changed this by
offering comment notes 14(A) and 14(B), which interpret
"in connection with" under § 2K2.1(b)(6).  Comment note
14(A) adopted the then-majority and more restrictive
"facilitation" standard for all offenses--except drug-
trafficking offenses--and explained that "in connection
with" should be interpreted to require that the firearm
"facilitated or had the potential of facilitating" another

8

felony offense.   U.S.S.G. § 2K2.1(b)(6), comment n. 14(A).[3]

For drug-trafficking offenses, comment note 14(B)(ii) adopted something very similar to the more permissive, "presence" standard formerly utilized by a minority of courts of appeals to interpret "in connection with" under § 2K2.1(b)(6).[4]  Commentary note 14(B)(ii), establishes a "proximity" standard and states that the "in-connection-with" enhancement applies, in the case of a drug trafficking offense, if the "firearm is found in close

---

3. Before the adoption of comment note 14(A), the "facilitation standard" was used by a majority of courts of appeals to interpret § 2K2.1(b)(6).  The standard was appropriated from Smith v. United States, 508 U.S. 223 (1993), in which the Supreme Court determined that the phrase "in relation to," as used in 18 U.S.C. § 924(c)(1), required that the firearm "facilitated" or "had the potential of facilitating" another crime.

4. See, e.g. United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997); United States v. Condren, 18 F.3d 1190, 1197 (5th Cir. 1994).  These courts adapted the "presence" standard for § 2K2.1(b)(6) from a different guidelines provision, § 2D1.1(b)(1), where an enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1(b)(1), comment. n. 3.

proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1(b)(6), comment n. 14(B)(ii)(emphasis added).[5]

In sum, comment note 14 lays out two different interpretations for the phrase "in connection with" as used in § 2K2.1(b)(6): If the underlying felony offense is a drug-<u>trafficking</u> offense, then the interpretation offered in 14(B)(ii) applies and the government need only show that the gun was in "close proximity" to the drugs; if the underlying offense is any other crime, such as a drug-<u>possession</u> offense, then the interpretation offered in 14(A) applies and the government must show that the weapon "facilitated" the offense. Thus, the court must first determine a threshold question: Was Osborne engaged in drug <u>trafficking</u> or simply drug <u>possession</u>?

_____

5. Comment note 14(B)(i) applies to burglary offenses and also lays out something similar to the "presence" standard. However, as no act of burglary has been alleged in this case, comment note 14(B)(i) is irrelevant and need not be discussed.

1.

The Guidelines do not define the term "drug-trafficking" offense.  The Supreme Court recently faced a similar issue in <u>Lopez v. Gonzales</u>, 549 U.S. 47 (2006), in which it interpreted "trafficking" in relation to the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B).  The Court concluded that common usage should be examined and that "ordinarily[,] 'trafficking' means some sort of commercial dealing."  549 U.S. at 51.  This definition helps focus the court's inquiry; it must determine whether Osborne was engaged in "commercial dealing" of drugs or whether he simply purchased or possessed the drugs for personal use.

2.

First, the expert testimony offered by Agent Whittle of the Drug Enforcement Agency ultimately and credibly demonstrates that Osborne was not engaged in drug trafficking.  Whittle initially concluded that ten pills

exceed the amount normally associated with personal use. However, despite having worked thousands of drug cases in his career, Whittle could not recall a case in which someone was indicted as a distributor for possessing as few as ten pills of ecstasy; he could establish only that 20 to 30 pills might be seen as a distributor's amount, while two to three pills would be a typical user's amount.   Whittle further conceded that an individual could personally consume ten pills in a couple of weekends of partying.   Finally, when the government recounted the facts of Osborne's case to Whittle and asked him to interpret the situation, he did not conclude that Osborne was engaged in drug trafficking; rather, he said either "there had been a transaction and no money was exchanged" or "there had been no transaction, if ten units is all the individual had." Trial tr. at 37 (doc. no. 43).

The government's other principal witness, Agent Spence, read from a report made by the officers who

arrested Osborne. According to the report, the block on which the arrest took place had been targeted for "saturation patrol" because of a high number of complaints concerning drug activity. The report further explained that the officers approached Osborne after he had crossed the street and interacted with another individual in a manner that appeared to be a "drug transaction." Trial tr. at 11 (doc. no. 43). Because she was simply reading from a report, however, Agent Spence could not explain to the court exactly what Osborne did or exactly why the officers who arrested him believed he was engaged in a drug transaction.

In conclusion, the court finds that, because there is no evidence that Osborne had money on him or engaged in any exchange of money, and because he possessed only a small amount of ecstasy when arrested, Osborne was not engaged in "trafficking" or "commercial dealing" of drugs when arrested.

3.

Because Osborne was not engaged in drug trafficking, the general "facilitation" standard under commentary note 14(a) applies, and the court must determine whether Osborne's possession of the weapon "facilitated" or "had the potential of facilitating" his simple possession of ecstasy. U.S.S.G § 2K2.1(b)(6), comment. n. 14(A).

The word "potential" casts a wide net and, in a case such as this, may appear limited only by human imagination. <u>Smith</u>, however, the original source of the standard, offers one limitation: The enhancement at issue should not apply if the gun was present as a "result of accident or coincidence." 508 U.S. at 237-238.  The Eleventh Circuit Court of Appeals did not previously favor the facilitation standard for interpreting § 2K2.1(b)(6). <u>See</u> <u>Rhind</u>, 289 F.3d at 695; <u>see also</u> <u>United States v. Jackson</u>, 276 F.3d 1231, 1234 (11th Cir. 2001)(discussing § 2K2.1(b)(6) and stating that, "in certain circumstances, mere possession of a firearm can be enough to apply a sentencing

14

enhancement"); c.f. United States v. Young, 115 F.3d 834, 837-838 (11th Cir. 1997)(per curiam)(declining to use the more restrictive "facilitation" standard from Smith to interpret "in connection with" in § 4B1.4(b)(3)(A), a guideline provision similar to § 2K2.1(b)(6), and applying the "presence" standard § 2D1.1(b)(1) instead). As such, there is a dearth of case law from this circuit interpreting the facilitation standard, and this court must look to other circuits.

Courts of Appeals that have frequently interpreted "potential of facilitating" regarding § 2K2.1(b)(6) have often asked whether possession of the gun may have "emboldened" the defendant's felonious conduct. See, e.g. United States v. Routon, 25 F.3d 815, 819 (9th Cir. 1994); United States v. Gomez-Arrellano, 5 F.3d 464, 466-67 (10th Cir. 1993); United States v. Loney, 219 F.3d 281 (3rd Cir. 2000). In drug and counterfeiting cases, in particular, courts have asked whether the defendant may have possessed the weapon to protect his or her contraband. Rhind, 289

F.3d at 695; <u>United States v. Condren</u>, 18 F.3d 1190, 1199 (5th Cir. 1994).

The court recognizes that there exists a "frequent and overpowering connection between the use of firearms and narcotics traffic." <u>United States v. Wooten</u>, 253 Fed. Appx. 854, 858 (11th Cir. 2008) (per curiam) (quoting <u>United States v. Pham</u>, 463 F.3d 1239, 1246 (11th Cir. 2006)); <u>see also</u> <u>United States v. Hodge</u>, 313 F. Supp. 2d 1283, 1290-91 (M.D. Ala. 2004) (Thompson, J.).  This court has relied on this assumption where there was sufficient evidence of drug trafficking.  <u>See</u> <u>United States v. Hunter</u>, 980 F. Supp. 1439, 1448 (M.D. Ala. 1997) (Thompson, J.).  However, lending too much weight to this assumption leads the exception (that proximity suffices in drug trafficking cases) to swallow the rule (that facilitation must be shown in all other cases); this cannot be permitted.  Each

16

decision must turn on the particular facts of each case.[6]

---

6. The court is aware that the Eleventh Circuit has
upheld district court decisions finding the requisite
"connection" under arguably similar facts to those
presented in this case. See, e.g., United States v.
Wooten, 253 Fed. Appx. 854 (11th Cir. 2007)(per
curiam)(finding "connection" where defendant had a loaded
shotgun in his trunk and marijuana, packaged for personal
use, in the passenger compartment); United States v.
Simmons, 2008 WL 4150004 (11th Cir. 2008)(upholding
sentencing enhancement where defendant had a semi-
automatic pistol and a small bag of marijuana, both in
his front pants pocket).  However, these cases do not
control the result in the present case for a number of
reasons.  First, these cases did not apply the bifurcated
standard established in the November 1, 2006, Guidelines,
which applies a "facilitation" standard for drug-
possession cases and a "proximity" standard for drug-
trafficking cases; rather, they relied on precedent
under the Eleventh Circuit's formerly "expansive"
standard, see Rhind 289 F.3d at 695 (holding that the
phrase "in connection with" should be given an "expansive
interpretation"), and placed great weight on the
assumption that "guns are the tools of the drug trade."
Wooten 253 Fed. Appx. at 857, (quoting United States v.
Pham, 463 F.3d 1239, 1246 (11th Cir. 2006)).  Second,
these decisions held only that the respective district
courts did not "clearly err" in applying the enhancement
under the circumstances presented; they did not hold that
all district courts viewing similar circumstance must
apply the enhancement.  The leeway inherent in the clear-
error standard permits district courts, acting as finders
of fact, to respond to the particular circumstances and
factual nuances of each given case.  Finally, these cases
were not selected for publication, and, therefore, do not
bind this court.

Ultimately, this court must look to the facts of this case and ask if the government has offered sufficient evidence that Osborne carried the weapon in connection with the ecstasy. As mentioned above, the focus is on whether the gun "emboldened" Osborne to possess ecstasy or whether he carried the weapon to protect his ecstasy. In deciding this very fact-intensive question, the court is impressed by three pieces of evidence. First, there is the relatively small amount of ecstasy possessed by Osborne, a misdemeanor amount under federal law. Second, there was no evidence presented that ecstasy is a particularly expensive drug. If it were very expensive, that would provide evidence that Osborne carried the weapon to protect his drugs; if it were very cheap, that would provide evidence that the gun and the drugs were not connected. When larger amounts of drugs or cash are involved, it is easier to see how a weapon might embolden its possessor or be used to protect the money or contraband. Third, there is Agent

18

Whittle's testimony that ecstasy is a "club drug," meaning that it is typically found at "rave parties."  He testified that ecstasy is a synthetic hallucinogen that increases a users heart rate and blood pressure and "creates energy," and that it is "very prevalent" among teenagers and young people, who take it to "dance for hours and hours."  Trial tr. at 35-36 (doc. no. 43).  No evidence, however, was presented that guns are typically associated with such a club drug, particularly in possessory or user amounts. These three factors lead the court to conclude that Osborne did not carry the weapon to embolden himself, or to protect the ecstasy, or "in connection with" the ecstasy in any other way; rather, he carried the ecstasy and the weapon at the same time as a "result of accident or coincidence."

***

Accordingly, it is ORDERED that defendant Anqwuan Lamar Osborne's objection to the application of the four-offense-

level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) in the

presentence investigation report is sustained.

    DONE, this the 19th day of December, 2008.

                      _____/s/ Myron H. Thompson_____
                      UNITED STATES DISTRICT JUDGE